ROBERT L. RAINES, *Appellee*, v. JOSHUA A. STONE, *Appellant*.

No. 17,617.

SYLLABUS BY THE COURT.

1. "FACTORY ACT"—*Injuries—Damages—Owner—Independent Contractor.* Under the findings the person in direct charge of the factory herein involved is held to have been the foreman and agent of the owner and not an independent contractor, and the owner, who retained control of the workmen and the work, is liable for an injury to an employee resulting from the failure to safeguard the machinery as the statute requires, and also for neglecting to warn or instruct the employee as to the dangers of a defective machine of which the injured employee was ignorant.

2. ——— *Definitions—Construction of Statute.* The factory act (Gen. Stat. 1909, § 4676 *et seq.*) contains its own definitions of the mills and manufacturing establishments which come within its provisions, and the meaning of these expressions is not affected by the restricted definitions of like terms in the act creating a state society of labor and industry, being sections 8015-8025 of the General Statutes of 1909.

Appeal from Montgomery district court. Opinion filed May 11, 1912. Affirmed.

*F. J. Fritch*, for the appellant.

*J. D. Brown*, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Robert L. Raines, the appellee, was an employee in a broom factory, and seven days after beginning work there he had his hand crushed

in a machine used for stripping seed from broom corn. He brought an action against the appellant, Joshua Stone, who was the proprietor of the factory, alleging that the injury was caused by the negligence of appellant in this: that the machine and its attachments were defective; that the defects were known to him but not to appellee; that appellant failed to warn appellee of the dangers incident to the operation of the machine; that appellant was negligent in not providing safe machinery and appliances with which to do the work required of him. In a second count appellee alleged that the machine in which his hand was crushed had a cog-gearing attachment which he was required to operate, and that it was practicable to have covered it, and that if safeguards, such as the factory law requires, had been provided they would have prevented the injury inflicted upon him, and that by reason of the unprotected machinery his hand was drawn into the cogs of the wheels and injured.

The answer of appellant was a general denial and an averment that the injury resulted from want of care on the part of appellee. A trial resulted in a verdict and special findings in favor of appellee. The contention now made by appellant is that the special findings are inconsistent with the general verdict, and further, that they require a judgment in his favor. Whether appellee was the servant or employee of appellant is questioned. It appears that Fred Reese was in direct charge of the factory, acting, as appellee claims, in the capacity of foreman, while appellant insists that Reese was an independent contractor, over whom appellant reserved no control, or no such control as would make him liable for injuries suffered by those employed in the factory.

As to the claim that appellee was employed by an independent contractor, and the relationship between him and appellant, the trial court instructed that "the general rule is that when a person lets out work to

another, the contractee reserving no control over the work or workmen, the relation of contractor and con- tractee exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the contractor."

In addition to this the court advised the jury that, under the evidence, whether the appellant was in control, and the extent of it, was a question of fact for the determination of the jury. The instructions of the court as to the relations of the parties are accepted by appellant without complaint, and the evidence upon which the instructions and findings are based has not been abstracted or preserved. The jury found that appellant contracted with Reese to furnish the premises, machinery and material for making brooms, but that it was done under appellant's instructions. Also that Reese had charge of the premises and supervision and control of the repair and · operation of the machinery used in making brooms, but that it was done under appellant's instructions. Further, it was found that Reese was given the right to employ, furnish and pay for the labor in the factory, but that it was done with appellant's money. It was also found that Reese had authority to discharge employees, and that his compensation was measured by the number of brooms which were made there. In other findings the jury designated Reese as foreman; and it can not be said, on these findings and in the absence of evidence, that appellant was not a master or employer. Tested by the rule of law stated to the jury, the appellant retained the right of control of the workmen and the work, and, under the findings, Reese's relationship was that of foreman and agent of appellant, rather than that of an independent contractor. It was therefore the duty of appellant to provide proper machinery and appliances for the workmen and to instruct those who were inexperienced employees as to the dangers incident to the use of de-

Raines v. Stone.

fective machinery, and for injuries which resulted from his want of care in this respect he is liable.

It is next contended that the special findings show that the act of negligence alleged and relied on for a recovery was not sustained. In one of the findings it was stated that the act of negligence which caused the injury was that appellee was not instructed as to the dangers of the machine. It was also alleged by appellee that the machinery was defective and dangerous; that the danger was unknown to appellee; and that appellant was negligent in failing to warn him of the danger. The answers to the special questions indicate the view of the jury to have been that the machinery was unsafe and dangerous, but finding No. 20 is that, even in that condition, he could have used it without injury to himself if he had been instructed as to the dangers of using the machine. There is a specific finding, too, that it was practicable to safeguard the cog gearing in the machine on which the appellee was at work without impairing the efficiency of the machine, and the manner in which it might be done was stated in another finding. Not all the grounds of negligence were covered in the special findings, but enough was specifically found to show liability for negligence in requiring appellee to work with defective and dangerous machinery without warning him of the danger. (*Turner v. Railway Co.,* 83 Kan. 315, 111 Pac. 433.) The findings are sufficient to show a liability because of appellant's failure to observe the requirements of the factory act in safeguarding the machinery by which the injury was inflicted, and which it was found could have been so effectively and practically guarded against as to have averted the danger which caused the injury to appellee. If the neglect of appellant to perform his common-law duty of exercising care towards his employees was not sustained, the findings as to noncompliance with the absolute duty imposed by the factory

act would support the verdict and judgment. However, the findings furnish a good basis of recovery on each of the grounds alleged in appellee's petition.

There is a further contention that there could be no liability because of the nonobservance of the requirements of the factory act, and because the mill in question was not provided for in that act. To the question "Was steam, water or any power other than manual labor used in the operation of any machinery in the premises described in the plaintiff's petition?" the jury answered "No." In charging the jury the court used the definition of a factory given in the act which creates a state society of labor and industry and provides for a commissioner of labor statistics. (Gen. Stat. 1909, § 8020.) There the expression "factory" is defined to mean "any premises where steam, water or other mechanical power is used in aid of any manufacturing process there carried on." Other definitions are given in that section, and it also contains a provision that these shall apply "in all laws of this state relating to the employment of labor, unless a different meaning is plainly required by the context." These definitions, however, were not applicable to what is termed the factory act, as it contains its own definitions, which are broader and more comprehensive than those given in the earlier act. After enumerating "smelters, oil refineries, cement works, mills of every kind, machine and repair shops," there is added "any other kind or character of manufacturing establishment, of any nature or description whatsoever, wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form." (Gen. Stat. 1909, § 4682.) This provision includes any and all mills and manufacturing establishments, without regard to the power used in operating them, and the legislature having expressly and definitely stated the meaning of

Bank v. Simpson.

the terms used in the act there is no reason for re-- sorting to the definitions of like terms in other acts which were designed to effect a different purpose. (*Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657.) The special finding, however, that the factory in question was not operated by steam, water, or by any other than manual labor· is not in conflict with the general verdict and does not militate against a recovery by appellee.

The judgment is affirmed.