PATTERSON, Chief Justice:
This appeal concerns a claim for double workmen’s compensation benefits by reason of the violation of the Mississippi Child Labor Law by an employer having workmen’s compensation coverage. Workmen’s compensation benefits, including funeral expenses, were awarded by the administrative law judge from which there is no appeal. It is undisputed that the decedent was a minor at the time of his death and was working in violation of the Mississippi Child Labor Law, if he was not engaged in farming activities at the time of his death.
Carroll Boyd Stafford, the decedent, was born on October 9, 1959, and died September 17, 1976, at the age of sixteen. He was an employee of U. S. Cattle Corporation headquartered in Vaiden, Mississippi, such corporation being a subsidiary of U. S. Sugar Corporation. Stafford’s employment required him to work between ten and twelve hours a day, five days a week, and five hours on Saturdays, in violation of the Mississippi Child Labor Law.
At the time of his death Stafford had entered one of three harvest store silos operated by U. S. Cattle Corporation. These silos were designed and used for the conversion into cattle feed, under controlled conditions, of grass, chopped corn and grain, generally produced and harvested on the property of U. S. Cattle Corporation and-for its storage. The feed was used in finishing the corporation’s cattle for the market. Stafford’s purpose in entering the anaerobic environment within the silo was to level the shelled corn which had been blown into the silo the previous day. Unfortunately, he died of asphyxiation.
The administrative law judge found U. S. Cattle Corporation, employer and appellee, to be an agricultural enterprise within the meaning and intent of the labor laws of the state and the Workmen’s Compensation Act and that the decedent was engaged in agricultural endeavors at the time of his death. He found that U. S. Cattle Corporation was not a manufacturing establishment under the labor laws of the state. These determinations, adverse to the dependents of Stafford, appellants, were appealed to the full commission where it was affirmed by two members of the commission, with a dissenting. opinion by the chairman. A further appeal was taken to the Circuit Court of the Second Judicial District of Carroll County wherein it was again affirmed leading to this appeal.
The issues to be determined are (1) whether U. S. Cattle Corporation was operating a manufacturing establishment within the meaning of Mississippi Code Annotated section 71-1-17 (1972) at the place and time of Stafford’s death; (2) whether Stafford was dually employed in both an exempted and a non-exempted work activity, and whether the work activity undertaken at the time of the accidental death was an agricultural or manufacturing endeavor; and (3) whether the appellants are entitled to double workmen’s compensation benefits under the mandate that the Work *925 men’s Compensation Law is to be liberally interpreted in favor of the claimant, giving consideration to the purpose of the Mississippi Child Labor Law.
Some detail is necessary to our conclusion, not an easy one, that U. S. Cattle Corporation’s activities at the cogent time were not those of a manufacturing establishment. U. S. Cattle Corporation is without doubt a large commercial concern engaged initially with tillage or cultivation of the soil and ending largely with the sale of finished or semi-finished cattle for the market. Its operation is conducted in Carroll, Montgomery and Grenada Counties and consists of approximately 22,800 acres of which approximately 8,900 are situated in Carroll County with approximately 5,800 acres being in one contiguous tract. The silos of the appellee are upon the last tract and the activities of Stafford and the other employees are largely confined to it although similar activities are conducted on the non-contiguous premises which also have conversion and storage structures. Approximately 1100 acres of the 5800-acre East Vaiden tract are cultivated in corn with the remaining being in pasture. A portion of the corn is cut for silage; the remainder is combined as shelled corn. The silage and shelled corn, either singly or in combination and sometimes supplemented with molasses from the parent U. S. Sugar Corporation, are fed to the cattle to finish them for market.
The silos are used for the fermentation of the raw product into silage and for storage until the silage is mechanically moved into the feed troughs for consumption. They are also used for the storage of shelled corn and its moistening with water, if necessary, for greater palatability until it is also moved by mechanical means to the feed troughs.
At the time Stafford met his death, no water was being added to the corn because it was harvested at a sufficient moisture level so as not to require added water. Stafford’s primary duties were agricultural in nature and he was engaged in the task of leveling the corn in the silo at the time he was asphyxiated. U. S. Cattle Corporation^ business was the feeding and raising of cattle to sell for market and the related agricultural endeavor of growing crops for feed. It was a necessary part of the agricultural operation to maintain a storage facility for the cattle feed.
Concerning appellants’ first assignment of error, it is our opinion that U. S. Cattle Corporation was not a manufacturing establishment within the meaning of Mississippi Code Annotated section 71-1-17 (1972), because the harvested grain was not converted from a raw product into a substantially different substance or material. After being stored in the silo, the corn was still in a raw and natural state which had not undergone any manufacturing process to transform it into another product for sale and distribution. We held in Lopanic v. Berkeley Cooperative Gin Co., 191 So.2d 108 (Miss.1966), a cotton gin to be a manufacturing establishment not exempt from the Child Labor Laws and that a seventeen-year-old employee who worked in excess of the statutory hours was entitled to double compensation benefits for his injury while performing his job. We also stated:
In considering what constitutes a manufacture or manufacturing, . . . generally there are three main or essential elements: (1) An original substance or material, frequently referred to as raw material. (2) A process whereby the original material is changed or transformed. (3) An article or substance which, by reason of being subjected to the processing, is to some extent different from the original substance or material. (191 So.2d at 112-113)
An application of these three elements leads us to conclude that the corn in the silo where Stafford was asphyxiated was not significantly different from the original raw material so as to be categorized as a manufactured product the result of a manufacturing process. This was not a grain elevator business where grain is converted from its raw state into an improved form by elevating, drying, cleaning and mixing processes; nor was it a grain business used *926 for buying, selling, storing, cleaning, sorting, shelling, and mixing grain, improving its grades, thereby converting it into new and improved or substantially different forms. See Jeffries v. Farmers' Union Coop Mercantile & Elevator Co., 102 Kan. 811, 176 P. 631 (1918); Buchanan v. Blair, 90 Kan. 420, 133 P. 709 (1913), as cited with approval in Lopanic, supra, at 113. This was a farm owned and run by U. S. Cattle Corporation for feeding and raising cattle. This grain was not silage although its ultimate use was to supplement the livestock feed.
Appellant contends, however, that even though Stafford was primarily a farm laborer, his employment was dual in nature and at the time of his death he was engaged in a manufacturing pursuit; but this contention is without merit for, in our opinion, Stafford was engaged in an agricultural pursuit at the time he died. Labor in excepted employment, i. e., farm labor, “includes all activities incidental to the operation.” Dunn, Mississippi Workmen’s Compensation, § 4 (2d Ed. 1967). Stafford’s task of leveling the corn in the silo was such an incidental activity. Agriculture implies “tillage or cultivation of the soil, under natural conditions, with large fields and appropriate farm buildings.... It also includes the rearing, feeding, and management of livestock.” Larson, 1C Workmen’s Compensation Law, § 53.31 (1980). We think the nature of Stafford’s employment was agricultural; and leveling the corn was merely incidental to it, not rising to the level of dual employment.
Since U. S. Cattle Corporation is not a manufacturing establishment but an exempt agricultural concern and Stafford was performing farm duties at the time of his death, we hold that double compensation benefits under Mississippi Code Annotated section 71-3-107 (1972) are not recoverable. This we believe to be the'proper construction of the Act even though ambiguities are generally construed in favor of the claimant. Dunn, supra, states:
Generally, it is only where ambiguity appears that the Act is susceptible to construction and in such instances the construction is usually in favor of the allowance of compensation. In rare instances, the court may and has gone beyond the letter of the law where legislative oversight was apparent and the intent was clear from the Act as a whole. The liberal view has been applied in a variety of instances, . .. but an exception to the rule of liberality is found in cases involving claims for penalties. Such provisions are strictly construed. All presumptions are against the imposition of penalties and all doubts are to be resolved in favor of the defendant. Id. at § 32 at pp. 35-36.
Since double benefits are a form of penalty, we strictly construe the statutory provision and resolve any doubts in favor of U. S. Cattle Corporation. For these reasons, we affirm.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.